STATE OF NORTH CAROLINA v. JAMES EARLEY GRAHAM, JR.

No. 7712SC569

(Filed 4 April 1978)

1. Criminal Law § 77.2— exculpatory statements by defendant—inadmissibility as substantive evidence—admissibility for corroboration—exclusion as harmless error

The trial court properly sustained the State's general objection to testimony by defendant that he told an officer at the Law Enforcement Center that the shooting of decedent was accidental, since exculpatory statements by defendant which were not part of the *res gestae* were not admissible as substantive evidence. Furthermore, if it was error to sustain the State's general objection because the testimony was admissible for the limited purpose of corroborating defendant's trial testimony, defendant was not prejudiced thereby where the officer thereafter testified fully concerning the statements made to him by defendant at the Law Enforcement Center.

2. Criminal Law § 51.1— gun residue tests—qualification of expert—training received after tests

Evidence of training received by an SBI agent prior to conducting residue tests with the homicide weapon was adequate to establish his qualifications to conduct the tests and to testify as an expert concerning the tests, and evidence of additional training which he received after the tests were conducted was properly admitted to bolster his qualifications to interpret the test results at the trial.

3. Criminal Law § 57— gun residue tests—firings into paper—time of tests—ammunition used

Gun residue tests were not inadmissible because the test firings were made into paper rather than into cloth similar to that in decedent's dress. Nor were the tests inadmissible on the ground that they were made three months after decedent was killed, during which time some of the powder residue on the dress might have been removed by handling, or on the ground that the ammunition used in the test firings was not the same type used to fire the fatal shot, where there was no evidence to indicate that decedent's dress was subjected to such vigorous handling as to affect materially the results of the tests, and the record did not establish that a different type of bullet was used in the tests than the one which killed the decedent.

4. Criminal Law § 97.1— permitting State to reopen case

The trial court did not abuse its discretion in permitting the State to reopen its case and present further evidence after both parties had rested.

5. Homicide § 32.1— error in instructions cured by verdict of guilty of lesser offense

The jury's verdict finding defendant guilty of the lesser offense of voluntary manslaughter rendered harmless any errors in the court's instructions on

the greater offense of second degree murder absent a showing that the verdict was affected thereby.

**6. Homicide § 21.9— heat of passion—argument and fight over gun**

In this homicide prosecution, evidence that defendant and deceased were arguing and fighting over a gun when deceased was shot was sufficient to permit the jury to find that defendant acted under the influence of passion when the killing occurred and to support the court's submission of an issue as to voluntary manslaughter.

**7. Homicide § 27.1— heat of passion—erroneous instruction cured by verdict**

Even if the court's definition of "heat of passion" was too strict, defendant was not prejudiced thereby since the jury did find that defendant acted in the heat of passion, thereby reducing his offense from second degree murder to manslaughter.

APPEAL by defendant from *Godwin, Judge*. Judgment entered 6 January 1977 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 15 November 1977.

Defendant was indicted for the first degree murder of Wilma Grooms. He was arraigned on a charge of second degree murder, to which he pled not guilty.

The State presented evidence to show: On 8 November 1975 defendant was living with Wilma Grooms. On that date Wilma returned to her apartment accompanied by her friend, Ida McKinnon, with whom she had spent the preceding night. Defendant asked Wilma where she had been and why she hadn't come home the night before. A quarrel ensued between defendant and Wilma, in the course of which defendant asked Wilma to return some money he had given her. Defendant told Ida McKinnon several times to leave, but each time Wilma told her to stay. Defendant went out to his car, opened the trunk, and returned to the apartment carrying a .22 caliber rifle. As Ida McKinnon started to leave, she heard Wilma say, "no, Junior, don't do that." Wilma and the defendant were standing close together in the middle of the living room, each attempting to hold the gun. Ida heard a shot. When this occurred, defendant was holding the gun toward the ceiling. Ida ran downstairs. When she left, defendant and Wilma were struggling for the gun. About thirty seconds after the first shot, Ida heard a second shot and heard defendant yell, "Where is she, I'm going to kill her too."

The police arrived a short time later to find Wilma's body on the floor in the kitchen with the rifle beside her. Her death was caused by a single gunshot wound in the chest, the path of the bullet beginning below the sixth rib, going from front to back, right to left, and at a 15 degree angle upward.

Defendant testified that he had wanted Ida to leave the apartment and that his only purpose in getting the rifle was to scare Ida. Wilma grabbed the gun when he brought it into the apartment, and in the ensuing struggle the gun accidentally discharged.

The jury found defendant guilty of voluntary manslaughter. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Jesse C. Brake for the State.*

*James D. Little for defendant appellant.*

PARKER, Judge.

[1]   On direct examination, defendant testified that when the officers came they took him to the Law Enforcement Center where he talked to Officer Cook. Defendant's counsel then asked him what he had told Cook. Objection by the State was sustained, to which ruling defendant now assigns error. We find no prejudicial error. The excluded testimony would not have been admissible as substantive proof in the defendant's favor. "What a party says exculpatory of himself after the offense was committed, and not part of the *res gestae*, is not evidence for him. Otherwise, he might make evidence for himself." *State v. Stubbs*, 108 N.C. 774, 775, 13 S.E. 90, 90 (1891); *accord, State v. Norris*, 284 N.C. 103, 199 S.E. 2d 445 (1973); *State v. Mitchell*, 15 N.C. App. 431, 190 S.E. 2d 430 (1972). Although not admissible as substantive evidence, testimony that defendant had made prior consistent statements to the police would have been admissible for the limited purpose of corroborating his trial testimony, and defendant himself was competent to testify that he made such statements. 1 Stansbury's N.C. Evidence, Brandis Rev. § 52. Defendant, however, did not offer the excluded testimony for the limited purpose for which it was admissible. He offered it generally, and the court sustained the State's general objection. There is authority to support the

view that the trial judge cannot be charged with error in excluding the evidence under these circumstances. *Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951); 1 Stansbury's N.C. Evidence, Brandis Rev. § 27. We need not, however, rest our decision on that basis. If it be conceded that it was error to sustain the State's general objection in this case, defendant could have suffered no prejudice. Officer Cook, called as a defense witness, later testified fully and without objection concerning the statements which defendant made to him at the Law Enforcement Center. These statements corroborated defendant's testimony that the shooting was accidental. To the extent that such corroborating testimony served to strengthen defendant's credibility with the jury, it could only have carried greater weight by coming from Officer Cook than from the defendant himself. Thus, defendant could not have been prejudiced by the exclusion of his own testimony that he had made the prior consistent statements.

[2] The State presented the testimony of Frederick Hurst, a special agent employed since 1 July 1969 in the crime laboratory of the State Bureau of Investigation. This witness was permitted to testify as an expert that in his opinion, based on test firings he made with the homicide weapon, the muzzle of the weapon "would have probably been at an approximate distance of greater than four feet but less than six and a half feet" from the dress worn by the decedent when she received the fatal shot. Before this testimony was admitted, the witness testified in detail concerning his courses of study and his on-the-job training experience with the State Bureau of Investigation. He was also permitted to testify, over defendant's objection, concerning a one week course of study "in reference to gunpowder and primer residue" which he took at the F.B.I. Academy at Quantico in August, 1976. Defendant contends that this testimony should not have been admitted, since it related to a course of study taken after the witness conducted the test firings involved in the present case, and that without evidence of this training, Hurst did not possess the necessary qualifications as an expert. We disagree. "The court's finding that a witness is qualified as an expert will not be disturbed on appeal if there is evidence to show that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject as to which he testifies." *State v. Vestal*, 278 N.C. 561, 594,

180 S.E. 2d 755, 776 (1971). The evidence of training Hurst received prior to conducting the tests was clearly adequate to establish his qualifications to conduct the tests. The evidence of additional training he received at the FBI Academy after the tests were conducted served to bolster his qualifications to interpret the test results at the trial. We find no error in admitting the testimony as to the post-test training or in permitting Hurst to testify as an expert.

[3] Defendant nevertheless contends that the test firings were conducted in a manner which rendered their results so unreliable that evidence concerning them should have been excluded. In this connection he points out that the test firings were made into paper rather than into cloth similar to that in decedent's dress; that they were made three months after decedent was killed, during which time some of the powder residue on the dress might have been removed by handling; and that the ammunition used in the test firings was not the same type used to fire the fatal shot. These factors were properly brought to the jury's attention by cross-examination of the State's witness, Hurst. They go to the weight and credibility of his testimony, not to its admissibility. *See State v. Tola,* 222 N.C. 406, 23 S.E. 2d 321 (1942). In our opinion, none of the factors involved, nor all of them in combination, were such as to render the test results so unreliable that it was error to admit testimony concerning them. In *State v. Atwood,* 250 N.C. 141, 108 S.E. 2d 219 (1959), our Supreme Court found no error in admitting expert opinion testimony based in part on test firings made into white blotting paper rather than into clothing of a type worn by the deceased. There was no evidence in this case to indicate that decedent's dress was subjected to such vigorous handling as to affect the results of the tests materially. Finally, the record does not establish that Hurst used a different type of bullet than the one which killed the deceased. (In this connection, the record describes the ammunition used by Hurst as "Remington Caliber .22 long rifle hollow point ammunition, the gold coated lead bullet," while the bullet which inflicted the fatal wound was described simply as a "twenty-two long.") We find no error in the admission of evidence concerning the tests or in permitting the expert to testify as to his opinion based thereon.

[4] After the State and the defendant presented evidence and rested, the trial judge permitted the State to reopen its case and

present further evidence. In this there was no error. "It is well settled that it is within the discretion of the trial judge to reopen a case and to admit additional evidence after both parties have rested and even after the jury has retired for its deliberations." *State v. Shutt*, 279 N.C. 689, 695, 185 S.E. 2d 206, 210 (1971); *accord, State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335 (1975). In the present case defendant makes no contention that he was denied opportunity for rebuttal, and no abuse of the court's discretion has been shown.

[5] By his assignment of error No. 8, defendant contends the court erred in its instructions to the jury on the offense of second degree murder. The verdict finding defendant guilty of the lesser offense of voluntary manslaughter rendered harmless any errors in the court's instructions on the greater offense, absent a showing that the verdict was affected thereby. *State v. Mangum*, 245 N.C. 323, 96 S.E. 2d 39 (1957); *see also State v. De Mai*, 227 N.C. 657, 44 S.E. 2d 218 (1947). Nothing in this record indicates that the challenged instructions on second degree murder in any way affected the verdict rendered finding defendant guilty of voluntary manslaughter.

[6] Defendant assigns error to the court's instructing the jury on voluntary manslaughter. While conceding that the State's evidence tended to show him guilty of second degree murder, he contends that the only other verdicts which could be supported by the evidence were verdicts finding him either guilty of involuntary manslaughter or not guilty and that under no view of the evidence could the jury properly find him guilty of voluntary manslaughter. We do not agree. "One who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter." *State v. Wynn*, 278 N.C. 513, 518, 180 S.E. 2d 135, 139 (1971). In the present case the evidence of the arguments and the fighting over the gun was sufficient to permit a jury to find that defendant acted under the influence of passion when the killing occurred. If there was scant evidence that defendant's passion was produced by adequate provocation, defendant is in no position to complain for it is well settled that "if the court charges on a lesser included offense when all the evidence tends to support a greater offense, the error is favorable to the defendant and he is without standing to challenge the verdict." *State v. Vestal*, 283 N.C. 249, 252, 195 S.E.

2d 297, 299 (1973). Indeed, as the opinion in the last cited case points out, 283 N.C. at 253, 195 S.E. 2d at 299-300, "[i]n borderline cases, prudence dictates submission of the lesser offenses. To give the defendant absolution if the judge makes a mistake in his favor, would tend to put the judge on trial. Such is not the purpose of the law."

[7]  Defendant next contends that even if it was proper to submit voluntary manslaughter as a possible verdict, the court erred by incorrectly defining "heat of passion" in such manner that the jury would have had to find that the defendant was in a "near rage" at the time of the shooting in order to benefit from the instruction. The short answer to this complaint is that even if the court's definition was too strict, the jury by its verdict did find that defendant acted in the heat of passion, thereby reducing his offense from second degree murder to manslaughter. We suspect that the error complained of was one in transcription rather than in what the court actually said to the jury, but whether that be true or not, it is clear that defendant was in no way prejudiced. His assignment of error directed to the court's instructions on voluntary manslaughter is overruled.

Defendant's motions to set aside the verdict and to grant a new trial were addressed to the sound discretion of the trial court. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971); *State v. Leigh*, 278 N.C. 243, 179 S.E. 2d 708 (1971). There was sufficient evidence to support the verdict, and no abuse of discretion has been shown.

Defendant's final assignment of error, No. 11, purports to bring in question the court's instructions on involuntary manslaughter. This assignment of error is based solely on Exception No. 17, which appears simply at the end of the charge without identifying in any manner the portion of the instructions in question as required by App. R. 10(b)(2). This exception will not be considered. App. R. 10(a).

In defendant's trial and in the judgment entered we find

No error.

Judges BRITT and VAUGHN concur.