CITY OF WINSTON-SALEM v. NORMAN L. COOPER AND WIFE, RUTH S. COOPER; GEORGE F. PHILLIPS, TRUSTEE; NORTHWEST PRODUCTION CREDIT ASSOCIATION

No. 34PA85

(Filed 18 February 1986)

1. **Eminent Domain § 6.9— expert witness—cross-examination concerning specific values of noncomparable properties—not allowed**

　　The trial court in a condemnation action correctly refused to allow the City to cross-examine the property owners' experts by propounding questions concerning or alluding to specific dollar amounts of a group of noncomparable properties.

2. **Eminent Domain § 6.2— value of other· property in vicinity excluded—not comparable**

　　The trial court did not err in a condemnation action by refusing to allow the City to offer evidence of the sales prices of two properties which it contended were comparable to the subject property where differences in the acreage, road frontage, quality of terrain, minable sand deposits, and remoteness in time supported the court's discretionary determination that the properties were not comparable to the subject property.

3. **Eminent Domain § 6.6— condemnation—expert witness—knowledge of zoning law—goes to credibility not admissibility**

　　The trial court did not err in a condemnation action by denying the City's motion to strike the entire testimony of one of the property owners' experts who allegedly misunderstood the permitted uses under a zoning ordinance. Even if the witness based his ultimate opinion on a misunderstanding of the allowable uses permitted by the zoning ordinance, that misunderstanding would go to the credibility rather than the admissibility of his evidence.

　　Justices MITCHELL and BILLINGS took no part in the consideration or decision of this case.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 72 N.C. App. 173, 323 S.E. 2d 750 (1984), which on plaintiff's appeal found error in a trial conducted by *Hairston, J.,* at the 28 November 1983 Session of FORSYTH County Superior Court and remanded for a new trial.

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr.; City Attorney Ronald G. Seeber and Assistant City Attorney Ralph D. Karpinos for plaintiff appellee.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready by F. Joseph Treacy, Jr., and Sapp and Mast by David P. Mast, Jr., for defendant appellants.*

EXUM, Justice.

This is a condemnation proceeding in which the plaintiff condemnor City of Winston-Salem ("City") complains of several rulings on the evidence made by Judge Hairston at a jury trial conducted to determine the amount of compensation due the owners, the defendants Cooper. Judge Hairston first ruled that the City could not cross-examine the owners' experts with regard to specific selling prices of other properties in the vicinity of, but not comparable to, the property being condemned. Next, Judge Hairston sustained objections to testimony of the City's experts regarding sales prices of other properties after he determined the other properties were not comparable to the property being condemned. Finally, Judge Hairston denied the City's motion to strike the entire testimony of one of the owners' experts.

The Court of Appeals concluded that Judge Hairston erred in his ruling on the cross-examination issue and that this error entitled the City to a new trial. The Court of Appeals did not decide whether Judge Hairston erred in excluding the testimony of the City's experts because it felt the evidence as to comparability might be different at the new trial; but it did determine that Judge Hairston correctly denied the City's motion to strike the owners' expert's testimony.

We conclude Judge Hairston ruled correctly on all points and that his judgment entered on the verdict should be allowed to stand. We reverse the Court of Appeals' decision that the case be remanded for a new trial.

I.

The City instituted condemnation proceedings on 21 August 1981 to acquire a 51-acre tract of land owned by defendants Cooper. After all issues except damages were settled, a commissioners' hearing was held, resulting in a compensation award of $144,840. Owners excepted to the Commissioners' Report and demanded a jury trial. At trial both parties presented evidence, including testimony of five experts.

The owners' evidence tended to show as follows: The 51-acre tract had been in the Cooper family for three generations. It was located in southwest Forsyth County near the Davidson County line approximately five miles from Clemmons. The property was

bounded on the north by Cooper Road for approximately 1100 feet and on the west by Muddy Creek, the largest water flow in Forsyth County, for 2500 feet. At the time of taking, the western-most portion of the property along the banks of Muddy Creek was being used as a sand mining operation. Geological surveys indicated that 13.26 acres of the property had minable and com-mercially salable sand deposits to an average depth of three and one-half feet. The sand deposits were "quite valuable" for use in asphalt production and for fill. The best use of 37.74 acres was for residential development. The best use of 13.26 acres was for sand mining. The residential use portion of the property was valued at $4,600 to $4,850 per acre and the sand mining portion at $9,000 to $9,500 per acre for a total value of $293,000 to $309,000.

Evidence for the City tended to show: The best use of the en-tire tract was for residential development which gave it a value of $2,500 to $2,700 per acre. When the value of certain im-provements was added, the entire tract was worth from $135,400 to $140,700. One of the City's expert appraisers was not aware of the extent of minable sand on the property but was of the opinion that whatever the extent, it had no effect on the value. Another appraiser for the City felt that the best use for two acres of the property was for sand mining, and he valued these two acres at $6,000 an acre. This appraiser was not aware that the property had 13.26 acres suitable for sand mining. A third witness for the City testified the subject property was worth between $2,750 and $3,000 an acre; yet on cross-examination this witness admitted he had never made a formal appraisal. He said, "I've never been on the property. Now, how can I tell you what it's worth if I haven't been on it?"

The jury verdict of $278,500 was within the range of opinion testimony presented by both sides but more nearly accorded with the owners' evidence.

## II.

[1] After the owners' expert real estate appraisers gave their opinions as to value and the methods whereby they arrived at those opinions, both were asked, respectively, on cross-examina-tion a similar question to which the trial court sustained the owners' objection. Mr. Henry Shavitz was asked whether he could point out on a certain aerial photograph of the subject property

and property immediately surrounding it "any vacant acreage tract . . . that has ever sold in any time in history for three thousand dollars or more?" Mr. Fred Peters was asked with regard to the same aerial photograph whether there were "any vacant residential areas anywhere . . . that sold for three thousand dollars or more?" Presumably the dollar amounts were with reference to per-acre prices. There then followed in the case of both experts protracted voir dire examinations out of the presence of the jury.

The voir dire examinations tended to show as follows: Both witnesses, in their effort to arrive at an appraisal of the subject property, studied the sales of other properties in the general vicinity. Some were located on the aerial photograph and others were not. None of the sales were of property considered by the witnesses to be comparable to the subject property. Indeed, these witnesses could not find what they considered to be comparable property. The witnesses thus considered such sales as were available and made necessary adjustments in arriving at their appraisals of the subject property. Most of the sales considered did have the same zoning, R-6, as the subject property and were in the southwest corner of Forsyth County. Some of the sales were at per-acre values close to the per-acre value placed by the witnesses on the subject property; some were more; and some were less. Neither witness knew of any properties shown on the aerial photograph that sold for more than $3,000 per acre.

Shavitz testified before the jury that the aerial photograph portrayed only 600 to 800 acres and was "a rather restricted geographical area" so that he did not limit himself to consideration of the properties within the photograph.

Judge Hairston made it clear during the voir dire of Peters that he would permit the experts to be cross-examined as to the distance from the subject property at which they found land values equivalent to their appraisals, saying, "It's the specific value I feel is confusing to the jury."

Peters thereafter testified on cross-examination that he had to go three miles from the subject property to find "a piece of R-6 property equal in value to what [he] determined the value of the residential use on [the subject property]."

The Court of Appeals concluded that Judge Hairston erred by not permitting the owners' experts to be cross-examined with regard to whether they found any sales of property within the aerial photograph at more than $3,000 per acre. This ruling, thought the Court of Appeals, denied the City the opportunity properly to test the experts' knowledge about the selling prices "of properties within the area." *City of Winston-Salem v. Cooper*, 72 N.C. App. 173, 177-78, 323 S.E. 2d 750, 752 (1984). The Court of Appeals said, "The City did not ask about specific tracts of property nor did it ask whether there was any property worth as much as the witnesses had testified that the Cooper property was worth." *Id.* The Court of Appeals properly recognized that the controlling principles on the question presented were set out in *Power Co. v. Winebarger*, 300 N.C. 57, 265 S.E. 2d 227 (1980), but did not think these principles precluded the question here posed by the City.

Although the Court of Appeals correctly read *Winebarger* as "prevent[ing] a party from putting before the jury on cross-examination the prices of other pieces of noncomparable property," *City of Winston-Salem v. Cooper*, 72 N.C. App. at 177, 323 S.E. 2d at 753, it accepted the City's argument that the questions were posed not to put before the jury prices of noncomparable real estate, but to show that defendants' experts' opinions were not based on knowledge of real estate prices in the area. *Id.* at 175, 323 S.E. 2d at 753. In so doing, the Court of Appeals seemed to misinterpret the *Winebarger* holding as excluding only evidence of prices of *specific tracts* of noncomparable property and permitting evidence of "the general values of other property near the subject property." *Id.* at 178, 323 S.E. 2d at 753. Indeed, this seemed to be the legal position of the City at trial when its counsel argued to Judge Hairston, "Well, your honor, I realize we can't go to a parcel and see what did that parcel sell for; but we can test the man's credibility by asking if he knows any tract that has ever sold in excess of a given amount of dollars."

We disagree with this approach. *Winebarger* holds that, although a witness expressing an opinion on property value may be cross-examined on his *knowledge* of values of nearby noncomparable property for the limited purpose of testing his credibility or expertise, the presiding judge must confine the cross-examination's scope to matters relevant to its limited purpose. *Winebar-*

*ger* rested on and restated principles derived from three earlier precedents. First, in *Highway Commission v. Privett*, 246 N.C. 501, 99 S.E. 2d 61 (1957), the witness had been asked on cross-examination whether he knew of the values and sales prices of other property in the area. The questioning ended when the witness replied in the negative. This Court found no impropriety in the questions propounded because none "undertook to elicit testimony as to the valuations or sales prices of other properties, the questions being directed to whether the witness *had opinions or knowledge* with reference thereto." *Id.* at 506-07, 99 S.E. 2d at 65. Second, in *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219 (1959), the question to which the trial court sustained an objection inquired whether the condemnor's appraiser had appraised a tract abutting the subject property for $300,000. This Court found no error in sustaining the objection, holding that because of the dissimilarity of the tracts, the total appraisal value was incompetent and irrelevant to impeach the witness or to show his lack of knowledge of values in the vicinity. The Court concluded "that petitioner desired only to get the $300,000.00 figure before the jury to induce thereby a liberal award. This within itself would violate the applicable rule of evidence." *Id.* at 396, 109 S.E. 2d at 233. Third, in *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972), this Court held competent questions to the state's expert witness regarding his knowledge of the value of other coastal lands in the area, to which the witness had responded that he himself had appraised them and knew their sales prices. We noted in *Johnson* "[t]his information satisfied the only legitimate purpose the question could have had." *Id.* at 20, 191 S.E. 2d at 654.

The *Winebarger* Court concluded that:

[W]hile a witness' knowledge, or lack of it, of the values and sales prices of certain noncomparable properties in the area may be relevant to his credibility, the specific dollar amount of those values and prices will rarely if ever be so relevant. The impeachment purpose of the cross-examination is satisfied when the witness responds to a question probing the scope of his knowledge. Any further inquiry which states or seeks to elicit the specific values of property dissimilar to the parcel subject to the suit is at best mere surplusage. At worst it represents an attempt by the cross-examiner to con-

vey to the jury information which should be excluded from their consideration.

*Winebarger,* 300 N.C. at 64-65, 265 S.E. 2d at 231-32.

*Winebarger* also relied upon Justice (later Chief Justice) Sharp's opinion in *Carver v. Lykes,* 262 N.C. 345, 137 S.E. 2d 139 (1964), which explained that where sales prices are material, a witness can be asked whether he knows if a certain property has been sold and, if so, whether he knows the price. If the witness does not know, his lack of knowledge is established. If he provides a sales price, even if totally erroneous, the adverse party is bound by the answer unless the purchase price is competent as substantive evidence of the value of the subject property. *Id.* at 356-57, 137 S.E. 2d at 148.

Of the four controlling principles we restated in *Winebarger,* the third and fourth are germane to the issue before us now:

(3) Where a witness has been offered to testify to the value of the property directly in issue, the scope of that witness' *knowledge* of the values and sales prices of dissimilar properties in the area may be cross-examined for the limited purposes of impeachment to test his credibility and expertise. *Templeton v. Highway Commission, supra.*

(4) Under these limited impeachment circumstances, however, it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties in his questions to the witness. *Carver v. Lykes, supra.* Moreover, if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted. *Highway Commission v. Privett, supra.* If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues. In such a rare case, however, the cross-examiner must be prepared to take the witness' answer as given. *Carver v. Lykes, supra.*

*Winebarger,* 300 N.C. at 66, 265 S.E. 2d at 232-33.

Applying these principles to the case at bar, we hold Judge Hairston ruled correctly in refusing to allow the City to cross-examine Shavitz and Peters by propounding questions containing or alluding to specific dollar amounts. That the questions were directed to a group of properties rather than a single tract does not distinguish this case from *Winebarger*. Indeed, the questions here exacerbate the wrong sought to be avoided by the principles relied on in *Winebarger*. That wrong is getting before the jury specific dollar values or sales prices of noncomparable properties under the guise of witness impeachment. It makes no difference whether the noncomparables are referred to individually or as a group.

To properly propound the impeachment cross-examination under *Winebarger* and its predecessors, the City first should have asked the witnesses whether they had knowledge of sales prices of any of the tracts portrayed in the aerial photograph. If the witnesses had responded affirmatively, they could have been asked to state the sales prices provided the trial judge determined in his discretion that the impeachment value of the answer outweighed the possibility of confusing the jury with a collateral issue.

It is clear from the record that after the witnesses on voir dire had asserted their knowledges of the sales prices of some of the properties in the aerial photograph, Judge Hairston in his discretion determined that the impeachment value of these prices, if any, was outweighed by the possibility of confusing the jury. Counsel for the City asked Judge Hairston "to make a determination that the impeachment value of the answer to this question . . . outweighs the possibility of confusing the jury with collateral issues." Ultimately Judge Hairston determined in his discretion that permitting the witnesses to give specific values would be "confusing to the jury." Indeed, it would be a rare case, as we pointed out in *Winebarger*, in which the impeachment value would outweigh the possibility of confusing the jury.

The City argues also that not permitting the owners' experts to respond to questions about specific values led the jury to believe that they had examined sales prices in the area in question and found them to be comparable to and supportive of the values they assigned to the Cooper property. This argument rests

on an incorrect assessment of the testimony given to the jury by these experts. Neither testified that they relied on property in the aerial photograph as comparable or as supportive of their appraisals of the subject property. On direct examination Shavitz testified that he did not consider any of the tracts on the aerial photograph as comparable and gave them "very light consideration." Shavitz testified unequivocally on cross-examination that he found no property on the aerial photograph that he considered to be comparable because "I felt the subject property was unique and different from those sales that I found. There were sales that were made near the subject property, but in my opinion, they were not very comparable." Peters made it clear to the jury that the closest tract he found of comparable value to the Cooper tract was several miles away and not portrayed in the aerial photograph.

It would, in essence, have been no more appropriate to permit the owners' experts to be cross-examined about specific sales prices of noncomparable properties under the guise of impeachment on cross-examination than it would have been to permit them to testify on direct as to specific sales prices of noncomparable properties which exceeded their evaluations of the subject property.

III.

[2]   The City sought to offer evidence of the sales prices of two properties which it contended were comparable to the subject property. One of the sales concerned the "Loflin-Hamlin" property located across Muddy Creek from the subject property. Another sale concerned the "Wake Forest" property approximately one-third of a mile from the subject property which fronted on Cooper Road. The City wanted to show that it had purchased the Loflin-Hamlin property in 1978 for approximately $1,517 per acre and that the Wake Forest property had sold on 24 January 1980 for approximately $2,000 per acre. Judge Hairston, after another protracted voir dire on the issue of comparability, determined that the Loflin-Hamlin and the Wake Forest properties were not comparable to the subject property and sustained the owners' objections to evidence of these sales. Since it ordered a new trial on the cross-examination issue, the Court of Appeals did not determine the correctness of Judge Hairston's rulings on the com-

parability question because it concluded the evidence regarding comparability might be different at the second trial. We, of course, must face this issue. We find no error in Judge Hairston's rulings about comparability.

It is clear that the sales prices of voluntary sales of property similar in nature, location, and condition to the land being condemned is admissible as evidence of the value of that land if the other sales are not too remote in time. Whether the properties are sufficiently similar to admit such evidence is a question to be determined by the trial judge in his sound discretion, usually after a hearing on the issue conducted out of the presence of the jury. *North Carolina State Highway Comm. v. Helderman*, 285 N.C. 645, 207 S.E. 2d 720 (1974); *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972); *City of Winston-Salem v. Davis*, 59 N.C. App. 172, 196 S.E. 2d 21, *disc. rev. denied*, 307 N.C. 269, 299 S.E. 2d 214 (1982). Decisions on matters within the trial judge's discretion will not be disturbed unless "manifestly unsupported by reason," *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985), or "so arbitrary that [the outcome] could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E. 2d 450, 465 (1985); *State v. Parker*, 315 N.C. 222, 337 S.E. 2d 497 (1985).

Applying these standards to the instant case, we cannot say that Judge Hairston abused his discretion in concluding that the Loflin-Hamlin and Wake Forest properties were not sufficiently similar to the subject property to admit evidence of their sales prices on the question of the subject property's value.

With regard to the Loflin-Hamlin sales in 1977 and 1978, evidence on voir dire tended to show as follows: The tract consisted of approximately thirty acres, of which ten acres were out of the flood zone. It was fenced in and consisted essentially of rough pasture with cows on it "that didn't do well." It was located on the other side of Muddy Creek from the Cooper property, but there was no evidence regarding the amount of sand on the property or whether it was useful for sand mining. The land was also described by the City's witness as a "totally depleted area." The City's witness said, "The Loflin-Hamlin company bought it, had cows on it. After they bought it, we [Diversified Realty, with whom the witness was employed] just basically kept the 'for sale'

sign on it." The witness also testified that land prices went up 8 or 9 percent a year between 1975 and 1981.

It seems clear to us that differences in the acreage, quality of terrain, minable sand deposits, and remoteness in time all combine to support Judge Hairston's discretionary determination that the Loflin-Hamlin property was not comparable to the Cooper property.

With regard to the Wake Forest property the evidence on voir dire tended to show as follows: This property consisted of 76.81 acres and fronted on Cooper Road and South Fork Creek approximately a third of a mile from the subject property. The land was generally rolling, with most of it being wooded. There were trees along the creek and some open fields "that used to be tended." The frontage on Cooper Road was, however, substantially less than that of the subject property, and South Fork Creek is substantially smaller than Muddy Creek. The Wake Forest property is also crossed by a large drainage ditch "which runs through the property." Although the City's witness said he thought some of the property would be suitable for a sand mining operation, he had no knowledge of the amount of sand or the depth of it on the Wake Forest property. A portion of the Wake Forest property "stands in water" during some periods of each year.

Again, we think the differences in acreage, road frontage, quality of terrain, and availability for sand mining all combine to support Judge Hairston's discretionary ruling that the Wake Forest property is not comparable to the subject property.

Even if, as trial judges, we might have come to a different conclusion on comparability, Judge Hairston's rulings are not manifestly unsupported by reason nor are they so arbitrary that they could not have been the result of a reasoned decision. We decline, therefore, to find that he abused his discretion in deciding not to admit this evidence.

The City argues that Judge Hairston did not really exercise his discretion in determining the comparability of the Wake Forest and Loflin-Hamlin properties; rather, he employed an unlawful test by requiring that properties be practically identical before evidence of the sales price of one is competent on the question of the value of another. We do not so read the record. It is true that

Judge Hairston did comment once during one of several lengthy voir dires that, "If you can show me two pieces of land that are identical and sold for the same, fine." Nevertheless, when taken in context we think it clear that this comment had its genesis in the judge's frustration with the length and repetitiveness of the voir dire examinations and does not reflect the basis for his rulings. The great bulk of the voir dire focused on the similarities and dissimilarities between the tracts sought to be compared. The record also reveals that Judge Hairston himself expressly compared the Loflin-Hamlin property and the subject property. With regard to the Wake Forest property, Judge Hairston was of the opinion that the City's own witness testified to too many adjustments when he himself tried to compare it with the subject property for the two to be comparable in law.

Finally, the City argues that Judge Hairston incorrectly determined lack of comparability when he adopted the owners' theory of highest and best use of the subject property as being, in part at least, for sand mining. We think a sufficient answer to this argument is that the availability for sand mining was only one of several differences in the properties sought to be compared and was not solely relied on by Judge Hairston in determining the comparability question.

IV.

[3] Finally, the City claims its own expert showed Shavitz' opinion was based on an erroneous understanding of the applicable zoning ordinances, thus disqualifying Shavitz as a competent expert witness. Shavitz testified that he considered the R-6 zoning to permit, among other uses, "multi-family housing" and he took these permitted uses into account in making his appraisal. On cross-examination he said he did not know precisely how many units per acre were permitted but that "it would be in the neighborhood" of nine to eleven units per acre. The City offered the testimony of one of its planners that R-6 zoning permitted only two dwelling units per acre unless water and sewer were available to the tract, in which case four units per acre were permitted. Another of the City's witnesses testified that only single-family residential units were permitted in R-6 zoning, but cluster-type planned residential developments were also permitted.

At the close of all of the testimony, the City moved to strike the entire testimony of owners' witness Shavitz on the ground that he misunderstood the permitted uses under the zoning ordinance "with respect to dwelling units on an acre of land." The motion was denied by Judge Hairston on the ground that such a misunderstanding, if any, went to the weight of the witness's testimony and not to his competence as a witness. The Court of Appeals agreed with Judge Hairston's ruling. So do we.

Even if Shavitz based his ultimate opinion as to value on a misunderstanding of the allowable uses permitted by the zoning ordinance, this would not be grounds for striking his testimony. It would constitute an attack on part of the data he might have considered in arriving at his opinion. "The process or method used . . . might be considered on the question of the credibility of the expert witnesses, but not on the competency or admissibility of their evidence." *State v. Tola*, 222 N.C. 406, 23 S.E. 2d 321 (1942); *accord, State v. Graham*, 35 N.C. App. 700, 242 S.E. 2d 512 (1978).

We conclude that there is no error in the trial below and the judgment of the trial court based upon the jury's verdict should be reinstated. The decision of the Court of Appeals vacating this judgment and remanding for a new trial is

Reversed.

Justices MITCHELL and BILLINGS took no part in the consideration or decision of this case.