ZACHARY, Judge.
 

 *439
 
 This appeal arises from domestic litigation between Dennis Kabasan (defendant) and his ex-wife Sonia Kabasan (plaintiff). Defendant appeals from equitable distribution, alimony, and child support orders entered by the trial court on 22 August 2016. Defendant has raised fourteen issues on appeal, in two of which he challenges the trial court's acceptance of Phaedra Xanthos as an expert in accounting, as well as the court's adoption of most of plaintiff's proposed findings and conclusions. Defendant also contends that the trial court abused its discretion in the classification, valuation, and distribution of certain assets in its equitable distribution order. Defendant further argues that the trial court erred in the calculations and rulings made in the court's alimony and child support orders. After consideration of defendant's arguments, in light of the record on appeal and the applicable law, we affirm in part and reverse and remand in part.
 

 Factual and Procedural Background
 

 The parties met in Brazil and were married there on 16 January 1999. Plaintiff was born in Brazil in 1960, and lived in Brazil until her marriage to defendant. Defendant, who was born in 1946, worked until his retirement in 2010 as a physician at the Veterans Administration Hospital in Asheville, North Carolina. Prior to marrying, the parties executed a prenuptial agreement. After they married, the couple moved to Asheville. One child was born to the marriage, a daughter born in 2000. During the marriage, the parties acquired property in the United States and Brazil. They traveled to Brazil, and plaintiff spent time in Brazil with her family.
 

 On 27 December 2013, plaintiff filed a complaint, which was assigned Buncombe County No. 13 CVD 5370, seeking divorce from bed and board, postseparation support, alimony, attorney's fees, and possession of the marital home. Defendant filed an answer on 31 January 2014, denying the material allegations of plaintiff's complaint, raising various defenses, stating a counterclaim for joint legal and physical custody of their daughter, and asking the court to impose travel restrictions on the minor child. In his answer and counterclaim, defendant also alleged that the parties' prenuptial agreement barred plaintiff's claims for alimony, postseparation support, and attorney's fees, and that the terms of the prenuptial agreement should govern the division of the parties' property. Plaintiff filed a reply on 28 March 2014, in which she agreed that the prenuptial agreement was valid, asked the court to determine child custody, and sought child support from defendant. On the same day, the trial court entered an order that awarded plaintiff temporary postseparation support and child support, granted the parties joint legal and physical custody of the minor child, and granted plaintiff a writ of
 
 *440
 
 possession of the marital home. On 9 July 2015, the trial court entered a final child custody order granting the parties joint legal and physical custody of their daughter.
 

 On 26 August 2015, plaintiff filed a complaint that was assigned Buncombe County No. 15 CVD 3789, seeking absolute divorce, equitable distribution of the parties' marital assets, and consolidation of the action with her previously-filed complaint. Plaintiff alleged that the prenuptial agreement did not bar her claim for equitable distribution, and that a division of the marital estate "in favor of plaintiff" would be equitable. On 18 September 2015, defendant filed an answer and counterclaim seeking,
 
 inter alia
 
 , an equal division of the marital estate. The parties were divorced on 26 February 2016. On 8
 
 *696
 
 March 2016, the trial court entered a declaratory judgment that the prenuptial agreement was valid and would be enforced, and that an equal division of the marital estate would be equitable.
 

 A trial was conducted on the issues raised by the parties' pleadings beginning on 25 April 2016, and on 22 August 2016, the trial court entered orders for equitable distribution, alimony, and child support. The evidence adduced at trial and the provisions of the court's orders are discussed below, as relevant to the issues raised on appeal. Defendant has appealed to this Court from these orders.
 

 Standard of Review
 

 "It is undisputed that '[t]he standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' "
 
 Cushman v. Cushman
 
 ,
 
 244 N.C. App. 555
 
 , 556-58,
 
 781 S.E.2d 499
 
 , 501 (2016) (quoting
 
 Pegg v. Jones
 
 ,
 
 187 N.C. App. 355
 
 , 358,
 
 653 S.E.2d 229
 
 , 231 (2007) ). "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary."
 
 Resort Realty of the Outer Banks, Inc. v. Brandt
 
 ,
 
 163 N.C. App. 114
 
 , 116,
 
 593 S.E.2d 404
 
 , 408 (2004) (citation omitted). "Simply stated, where the trial court's findings of fact are supported by competent evidence, and the findings of fact, in turn, support the trial court's conclusions of law, the decision of the trial court will be affirmed. This Court will not reweigh the evidence."
 
 Pegg,
 

 187 N.C. App. at 358
 
 ,
 
 653 S.E.2d at 231
 
 . Moreover, "where a trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal."
 
 Juhnn v. Juhnn
 
 ,
 
 242 N.C. App. 58
 
 , 63,
 
 775 S.E.2d 310
 
 , 313 (2015) (citation omitted). "While findings of fact by the trial
 
 *441
 
 court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable
 
 de novo
 
 ."
 
 Robbins v. Robbins
 
 ,
 
 240 N.C. App. 386
 
 , 394,
 
 770 S.E.2d 723
 
 , 728 (internal quotation marks omitted),
 
 disc. review denied
 
 , --- N.C. ---- ,
 
 775 S.E.2d 858
 
 (2015).
 

 Defendant has appealed from orders for equitable distribution, child support, and alimony. "[W]hen reviewing an equitable distribution order, this Court will uphold the trial court's written findings of fact as long as they are supported by competent evidence. However, the trial court's conclusions of law are reviewed
 
 de novo
 
 . Finally, this Court reviews the trial court's actual distribution decision for abuse of discretion."
 
 Mugno v. Mugno
 
 ,
 
 205 N.C. App. 273
 
 , 276,
 
 695 S.E.2d 495
 
 , 498 (2010) (citations and quotation marks omitted). Similarly, our review of a child support order
 

 is limited to a determination whether the trial court abused its discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.
 

 Spicer v. Spicer
 
 ,
 
 168 N.C. App. 283
 
 , 287,
 
 607 S.E.2d 678
 
 , 682 (2005) (citations omitted). This Court has summarized our review of alimony orders as follows:
 

 If the court's findings of fact are supported by competent evidence, they are conclusive on appeal, even if there is contrary evidence. Whether a spouse is entitled to an award of alimony or post-separation support is a question of law. This Court reviews questions of law
 
 de novo
 
 .... The trial court's determination of the amount of alimony is reviewed for an abuse of discretion.
 

 Collins v. Collins
 
 ,
 
 243 N.C. App. 696
 
 , 699,
 
 778 S.E.2d 854
 
 , 856 (2015) (citing
 
 Rickert v. Rickert
 
 ,
 
 282 N.C. 373
 
 , 379,
 
 193 S.E.2d 79
 
 , 82 (1972) ) (other citations omitted).
 

 Qualification of Plaintiff's Expert Witness
 

 Defendant first argues that the trial court "abused its discretion when it accepted Phaedra Xanthos as an expert in forensic accounting
 
 *442
 
 and valuation" and that the court "should
 
 *697
 
 have disqualified her and her testimony once it became apparent she was not competent to testify as an expert." We disagree.
 

 Initial Qualification of Ms. Xanthos as an Expert in Accounting
 

 Defendant argues that it was error to allow Ms. Xanthos to testify as an expert in "forensic accounting and valuation." Although in its equitable distribution order, the trial court found that Ms. Xanthos "was qualified as an expert in forensic accounting and valuation," the transcript establishes that, following voir dire, the trial court ruled that "Ms. Xanthos is qualified by this Court in the area-as an expert in the area of accounting." At no time during the trial did the trial court rule that Ms. Xanthos was an expert in forensic accounting and valuation. We conclude that Ms. Xanthos testified as an expert in accounting, rather than as an expert in related specialties. Moreover, at trial, defendant did not dispute that Ms. Xanthos was well-qualified as an expert in accounting, forensic accounting, or valuation. Following voir dire, defendant's counsel stated:
 

 Your Honor, I certainly don't deny that she, Miss Xanthos, has an impressive resume. Certainly she's well qualified in fraud investigations, in business valuations, all of these things listed here. I would contend, however, that she is certainly not an expert in coverture fractions, in valuing pensions in North Carolina, anything like that.... So I have very real reservations about Miss Xanthos presenting herself as an expert in this case specifically as to a retirement account and an annuity.
 

 Discussion
 

 On appeal, defendant argues that the trial court abused its discretion by failing to disqualify Ms. Xanthos as an expert, on the grounds that she offered "speculative" testimony as to the value of certain financial assets and real property, and that her responses to defendant's cross-examination raised doubts as to whether Ms. Xanthos was familiar with Brazilian family law or with the proper interpretation of
 
 Watkins v. Watkins
 
 ,
 
 228 N.C. App. 548
 
 ,
 
 746 S.E.2d 394
 
 (2013). Defendant contends that although Ms. Xanthos was "qualified as an expert initially" she "should have later been disqualified" and that the trial court "abused its discretion in not disqualifying Ms. Xanthos and striking her testimony[.]"
 

 During the trial, defendant objected to the trial court's consideration of certain portions of Ms. Xanthos's testimony, but did not move
 
 *443
 
 to disqualify Ms. Xanthos as an expert in accounting. Thus, defendant's appellate argument is apparently that that the trial court erred by not disqualifying her
 
 ex mero motu
 
 . Defendant has not cited any legal authority in support of his position. "It is not the role of the appellate courts ... to create an appeal for an appellant."
 
 Viar v. N.C. DOT
 
 ,
 
 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361 (2005). "It is likewise not the duty of the appellate courts to supplement an appellant's brief with legal authority or arguments not contained therein."
 
 State v. Hill
 
 ,
 
 179 N.C. App. 1
 
 , 21,
 
 632 S.E.2d 777
 
 , 789 (2006).
 

 Furthermore, it is well-established that doubts as to an expert's opinions go "to the weight of the witness's testimony and not to his competence as a witness."
 
 Winston-Salem v. Cooper
 
 ,
 
 315 N.C. 702
 
 , 714,
 
 340 S.E.2d 366
 
 , 373 (1986). In
 
 Winston-Salem
 
 , the appellant argued that "its own expert showed [the appellee's expert's] opinion was based on an erroneous understanding of the applicable zoning ordinances, thus disqualifying [him] as a competent expert witness."
 
 Id.
 
 at 713,
 
 340 S.E.2d at 373
 
 . Our Supreme Court rejected this argument:
 

 Even if [the expert] based his ultimate opinion as to value on a misunderstanding of the allowable uses permitted by the zoning ordinance, this would not be grounds for striking his testimony. It would constitute an attack on part of the data he might have considered in arriving at his opinion. "The process or method used ... might be considered on the question of the credibility of the expert witnesses, but not on the competency or admissibility of their evidence."
 

 Winston-Salem
 
 ,
 
 315 N.C. at 714
 
 ,
 
 340 S.E.2d at 373
 
 (quoting
 
 State v. Tola
 
 ,
 
 222 N.C. 406
 
 , 409,
 
 23 S.E.2d 321
 
 , 323 (1942) ). We conclude that defendant has failed to establish that he
 
 *698
 
 is entitled to relief on the basis of this argument.
 

 Court's Valuation of Financial Instruments
 

 Defendant argues next that the trial court abused its discretion in "how it valued the marital portion of the TSP account, the Aviva annuity, the Vanguard Trust, and the Vanguard IRA, as of [the] date of separation[.]" We have carefully considered defendant's contentions concerning this issue, and conclude that defendant is not entitled to relief.
 

 N.C. Gen. Stat. § 50-20.1
 
 (2016) addresses equitable distribution awards of vested and nonvested "pension, retirement, or other deferred compensation benefits."
 
 N.C. Gen. Stat. § 50-20.1
 
 (d) provides that the
 
 *444
 
 percent of such benefits to which each spouse is entitled is calculated as follows:
 

 (d) The award shall be determined using the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment. The award shall be based on the vested and nonvested accrued benefit, as provided by the plan or fund, calculated as of the date of separation, and shall not include contributions, years of service, or compensation which may accrue after the date of separation. The award shall include gains and losses on the prorated portion of the benefit vested at the date of separation.
 

 "The numerator of this fraction, termed a coverture fraction, 'represents the total number of years of marriage, up to the date of separation, which occurred simultaneously with the employment which earned the vested [and nonvested] pension. The denominator represents the total years of employment during which the pension accrued.' "
 
 Robertson v. Robertson
 
 ,
 
 167 N.C. App. 567
 
 , 572,
 
 605 S.E.2d 667
 
 , 670 (2004) (quoting
 
 Bishop v. Bishop
 
 ,
 
 113 N.C. App. 725
 
 , 729-30,
 
 440 S.E.2d 591
 
 , 595 (1994) (internal quotation marks omitted)).
 

 In the present case, defendant argues that the trial court abused its discretion by applying the coverture fraction to determine the value of the marital portion of four financial assets: the TSP, the Aviva account, the Vanguard IRA, and the Vanguard Trust. Defendant has not challenged the evidentiary support for any specific findings of fact in the trial court's order. Accordingly, the court's findings are conclusively established. "Unchallenged findings of fact are binding on appeal.... The trial court's conclusions of law must be supported by adequate findings of fact."
 
 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 13,
 
 707 S.E.2d 724
 
 , 733 (2011) (citing
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ).
 

 In the present case, the trial court's findings of fact included the following findings relevant to the court's valuation of the marital portion of the TSP account, the Aviva annuity, the Vanguard IRA, and the Vanguard Trust:
 

 37. The Defendant retired from the V.A. on May 17, 2010.
 

 *445
 
 38. During the Defendant's employment at the V.A., he participated in the Federal Employees Retirement Savings program (hereinafter, FERS) and in the Federal Thrift Savings Plan (hereinafter, TSP).
 

 ...
 

 46. The TSP is similar to a 401(k) type plan except that the TSP associated with the FERS employees includes employer or agency contributions which are subject to vesting. FERS employees have a time in service requirement before agency contributions vest.
 

 47. The Defendant transferred TSP funds, including TSP funds properly classified as marital funds, into an Aviva Annuity and into a Vanguard IRA.
 

 48. The parties disagree about the proper method of valuing the marital portion of the TSP, and therefore disagree as to the value of the marital portion of the Aviva Annuity and the Vanguard IRA.
 

 49. The parties also disagree about the fair market value of the Aviva Annuity at date of separation and presently.
 

 50. To resolve these issues, the Court must first consider the proper valuation approach to take in determining the value of
 
 *699
 
 the marital portion of the TSP. The Plaintiff contends that the use of the coverture fraction is proper pursuant to N.C.G.S. § 50-20.1. Using this approach, the Plaintiff concludes that 50.2% of the TSP is marital.
 

 51. The Plaintiff then goes on to conclude that 50.2% of the money transferred from the TSP to purchase the Aviva Annuity created a 50.2% interest in the Aviva Annuity.
 

 52. The Defendant rolled $400,000 in TSP money into the Aviva Annuity, in order to purchase the Aviva Annuity on June 2, 2011....
 

 53. The Plaintiff concludes that $200,738 or 50.2% of the Aviva Annuity was purchased with marital money from the TSP.
 

 54. The Defendant also rolled $196,193 in TSP money out to a Vanguard IRA on March 11, 2013....
 

 *446
 
 55. The Plaintiff concludes that $98,458 or 50.2% of this rollover was marital money....
 

 56. Both the Aviva Annuity and the Vanguard IRA have passively increased in value since these rollovers occurred.
 

 57. On the date of separation, the Plaintiff contends that the marital portion of the Vanguard IRA was $103,219.... The Plaintiff contends that date of distribution value is $112,372, again due to passive growth.
 

 58. The Defendant has valued the TSP by using a tracing method, considering and totaling each contribution to the account made during the marriage, together with passive gains and losses on these amounts. In support of this approach, which is not supported by N.C.G.S. § 50-20.1, the Defendant relies on
 
 Watkins v. Watkins,
 

 228 N.C. App. 548
 
 ,
 
 746 S.E.2d 394
 
 (2013).
 

 59. In
 
 Watkins
 
 , the trial court was reversed for failing to use a coverture fraction to divide an IRA that was funded with "deferred compensation" even though all compensation had been earned by Defendant Watkins at his date of separation.
 

 60. The TSP in this case likewise contained deferred compensation; that is, compensation from the employer that was subject to vesting. Although the Defendant's TSP was fully vested at the time of his retirement, Defendant Kabasan's [situation] cannot be discerned from that of Defendant Watkins, who had also separated from his employer and whose benefits were fully vested at the time of his trial.
 

 61. The Court of Appeals in
 
 Watkins
 
 has stated that: "We note that there are certain 401(k) plans pursuant to which employer contributions vest over a designated period of time and that employer contributions in these instances might be construed as 'deferred compensation benefits.' "
 
 Watkins v. Watkins
 
 ,
 
 228 N.C. App. 548
 
 [, 554,]
 
 746 S.E.2d 394
 
 [, 398] (2013)....
 

 62. The TSP in this case is analogous to a 401(k) that contains "deferred compensation benefits" in that a certain portion of the TSP contributions made by the Defendant's employer were subject to vesting.
 

 *447
 
 63. The Defendant's expert, Edward Fidelman, did not consider
 
 Watkins
 
 before using his tracing valuation method with respect to the TSP.
 

 64. Mr. Fidelman was unable to state what portion of TSP contributions by the Defendant's employer [was] subject to vesting requirements.
 

 65. Mr. Fidelman defined deferred compensation as all compensation by an employer that is "not immediately subject to tax[,]" a definition that is actually broader than the definition provided in
 
 Watkins
 
 .
 

 66. The Court has no evidence upon which it can make a determination as to what part of the TSP contributions occurring during marriage [was] subject to vesting and therefore "deferred compensation" and what portion of said contributions [was] immediately vested.
 

 67. The Defendant's analysis, produced by Edward Fidelman, ... contains an assumption that all marital money traced in the TSP was used to purchase the Aviva Annuity. Because the methodology applied by the Defendant to determine the marital portion of the TSP is rejected, the Court need not further consider whether or not the Defendant's assumption is correct.
 

 *700
 
 68. The Court finds that Phaedra Xanthos, the Plaintiff's expert, has correctly applied a coverture fraction to the TSP.
 

 69. The Court finds it equitable therefore, that this coverture fraction be extended to the Aviva Annuity, in order to determine the marital component of the Aviva Annuity, and extended to the Vanguard IRA, in order to determine the marital component of the Vanguard IRA.
 

 70. The Court finds that on the date of separation, the marital value of the Vanguard IRA was $103,219.... The Court finds that the date of distribution marital value of this IRA is $112,372 due to passive growth.
 

 ...
 

 81. On the date of separation, the Aviva Annuity accumulated value was $484,707.86.
 

 *448
 
 82. The present Aviva Annuity accumulated value is $543,877.40.
 

 83. The marital portion of the Aviva Annuity is 50.2% or $272,942 of the present value.
 

 ...
 

 136. The parties dispute whether or not a portion of the balance of the Defendant's Vanguard Securities Account, which existed as a Family Trust at date of separation, is marital.
 

 137. Defendant's exhibit 2 was introduced through the Defendant's expert Ed Fidelman, CPA.
 

 138. Schedule 4 of exhibit 2 traces separate and marital contributions into this account.
 

 139. It is clear from schedule 4 of exhibit 2 that contributions were made into this account during marriage, and Mr. Fidelman has calculated passive gains on those contributions during marriage.
 

 140. Mr. Fidelman then assumes that any marital contributions made during marriage were spent during marriage for the remodel of 9 Crowningway Drive and for the acquisition of 240 Collins Avenue, Unit 6D, otherwise referred to as Terrace View Towers.
 

 141. Mr. Fidelman's assumption is not supported by the evidence, the Defendant having testified clearly that he used separate funds to remodel 9 Crowningway Drive and for the acquisition of 240 Collins Avenue, Unit 6D, otherwise referred to as Terrace View Towers.
 

 142. The parties have further testified that 9 Crowningway Drive and 240 Collins Avenue, Unit 6D, otherwise referred to as Terrace View Towers, are marital property.
 

 143. Marital funds, therefore, remained in the Vanguard Securities Account/Family Trust, at date of separation.
 

 144. Plaintiff's expert, Phaedra Xanthos, CPA has conducted the same tracing analysis as Ed Fidelman, to determine the balance of marital funds existing in the Family Trust at date of separation, which total $153,140.
 

 *449
 
 145. Ms. Xanthos' analysis of marital money moving through the Vanguard Securities Account and into the Family Trust, was introduced as Plaintiff's exhibit 28.
 

 146. The Court finds Ms. Xanthos' tracing of marital funds, as illustrated by exhibit 28, to be credible.
 

 147. At date of separation, the Defendant was in possession of $153,140 in marital funds, held in a Family Trust.
 

 Based upon these and other findings, the trial court entered findings and conclusions stating that the financial assets at issue had the date of separation values cited above. Defendant does not challenge the evidentiary support for the court's findings, contend that the court's findings fail to support its conclusions, or dispute the mathematical calculations made by the court. Instead, defendant's sole challenge to the trial court's valuation of these assets is that the court abused its discretion by adopting the approach taken by Ms. Xanthos which, according to defendant, fails "to comply with
 
 Watkins
 
 [
 
 v. Watkins
 
 ,
 
 228 N.C. App. 548
 
 ,
 
 746 S.E.2d 394
 
 (2013),
 
 disc. review denied
 
 ,
 
 367 N.C. 290
 
 ,
 
 753 S.E.2d 670
 
 (2014).]" We conclude that this argument lacks merit.
 

 In
 
 Watkins
 
 , as in this case, the defendant appealed the trial court's equitable distribution order. On appeal, the defendant argued that,
 
 inter alia
 
 , "the trial court erred in classifying and valuing two of his investment
 
 *701
 
 retirement accounts (IRAs)."
 
 Watkins
 
 ,
 
 228 N.C. App. at 551
 
 ,
 
 746 S.E.2d at 396
 
 . The defendant had funded one IRA with the proceeds of a defined benefit pension plan, and the other with the proceeds of a 401(k) account to which he and his employer had contributed during his employment. The trial court relied upon the calculations of plaintiff's expert, Mr. Shriner,
 
 [1]
 
 in its determination of the respective values of the marital and separate components of the IRAs. Mr. Shriner computed the total value of the IRAs at the date of marriage, which he considered to be separate property, and applied a rate of growth to these funds during the marriage. Mr. Shriner thus "traced" the defendant's premarital contribution to the IRAs, multiplied by a fixed rate of growth for the duration of the marriage, and reported the resulting figure as defendant's separate property.
 

 On appeal, Mr. Watkins argued that the trial court erred by accepting Mr. Shriner's approach, on the grounds that "the coverture fraction method ... was the required method of valuation under
 
 *450
 

 N.C. Gen. Stat. § 50-20.1
 
 (2011) and this Court's precedent."
 
 Watkins
 
 at 552,
 
 746 S.E.2d at 397
 
 . This Court held that the statute did not require the court to apply the coverture fraction in every circumstance:
 

 In the case
 
 sub judice
 
 , Defendant posits that
 
 N.C. Gen. Stat. § 50-20.1
 

 required
 
 the trial court to apply the coverture ratio because Defendant's IRAs are "defined contribution plans." Defendant relies upon
 
 Robertson v. Robertson
 
 ,
 
 167 N.C. App. 567
 
 ,
 
 605 S.E.2d 667
 
 (2004), in support of this contention.... [W]e believe that neither
 
 N.C. Gen. Stat. § 50-20.1
 
 nor our holding in
 
 Robertson requires
 
 that a trial court apply the coverture ratio to determine the marital portion of an IRA, except to the extent that the IRA is funded through a deferred compensation plan or is otherwise brought within the purview of
 
 N.C. Gen. Stat. § 50-20.1
 
 .
 

 Id
 
 . at 552-53,
 
 746 S.E.2d at 397
 
 (emphasis in original).
 

 This Court concluded that if the funds in an IRA were immediately available to the employee, the IRA would not include "deferred compensation" and, as a result, the trial court would not be required to apply the coverture fraction, because imposing such a mandatory requirement might "lead to grossly inequitable results[.]"
 
 Watkins
 
 at 555,
 
 746 S.E.2d at 398
 
 . On the facts of
 
 Watkins
 
 , this Court held that, because the funds in the 401(k) did not include any deferred compensation, the trial court had the discretion to apply the tracing approach espoused by Mr. Shriner. The Court reached a different conclusion with regard to the IRA that was funded with the proceeds of a traditional defined benefit pension. Because those funds had been subject to a vesting requirement, the Court reversed and remanded for recalculation of the value, using the coverture fraction system. In sum,
 
 Watkins
 
 applied the provisions of
 
 N.C. Gen. Stat. § 50-20.1
 
 to an IRA funded with the proceeds of a deferred compensation plan, as specified in the statute. On the other hand, the Court held that a trial court was not
 
 required
 
 to apply the coverture fraction approach to valuation of a financial asset that included no deferred compensation.
 

 Defendant argues that the application of the coverture fraction to the financial assets at issue in this case did not "comply" with
 
 Watkins
 
 . First of all, the value of the Vanguard Trust was determined by use of the "tracing" method for which defendant argues, and not by application of the coverture fraction approach. With regard to the valuation of the remaining financial assets at issue, it must be noted that this Court's
 
 *451
 
 opinion in
 
 Watkins
 
 emphasized that "neither
 
 N.C. Gen. Stat. § 50-20.1
 
 nor our holding in
 
 Robertson requires
 
 that a trial court apply the coverture ratio to determine the marital portion of an IRA, except to the extent that the IRA is funded through a deferred compensation plan or is otherwise brought within the purview of
 
 N.C. Gen. Stat. § 50-20.1
 
 ."
 
 Id
 
 . at 552,
 
 746 S.E.2d at 397
 
 . This Court did not hold that in such a situation the trial court was barred from applying the coverture fraction, if appropriate. Nor did the opinion announce some other mandatory practice restricting the discretion traditionally afforded to a trial court.
 
 *702
 
 In support of his position, defendant relies primarily upon the opinions of his two expert witnesses, Mr. Shriner and Mr. Fidelman, which are not binding on this Court. Defendant also alleges that "Mr. Shriner had to use a coverture fraction in the
 
 Watkins
 
 trial, because there were no records on which to base an accurate tracing of separate funds. The trial court agreed with him and was upheld." Defendant's contention is both puzzling and inaccurate. As discussed above, (1) in
 
 Watkins
 
 , Mr. Shriner
 
 did not
 
 use the coverture fraction approach, and (2) his use of the "tracing" approach was reversed as to one of the IRAs. Moreover, the opinion includes no discussion of what records were available to Mr. Shriner.
 

 We conclude that defendant has failed to show that the trial court erred by adopting the coverture fraction approach employed by Ms. Xanthos in the valuation of the TSP account, the Aviva annuity, or the Vanguard IRA, or that the trial court's findings and conclusions on this issue violated a mandatory requirement enunciated in our opinion in
 
 Watkins
 
 . As this is the only basis upon which defendant challenges the trial court's valuation of the subject assets, we conclude that defendant is not entitled to relief on this issue.
 

 Trial Court's Treatment of Potential Surrender Penalties
 

 Defendant argues next that the trial court "abused its discretion when it found that potential surrender charges/early withdrawal penalties on the Aviva annuity were speculative and could not be considered, when in the child support and alimony orders, this same court imputed additional income specifically based on these assets being immediately drawn against." This argument lacks merit.
 

 The terms of the Aviva annuity included a penalty for withdrawal of funds during the first twelve years after purchase. It is undisputed that defendant did not intend to withdraw money from the annuity during this period. In its equitable distribution order, the trial court made
 
 *452
 
 several findings of fact concerning the penalty for early withdrawal of funds from the Aviva annuity:
 

 71. The parties experts disagree as to the total value of the Aviva Annuity at date of separation, and presently.
 

 72. The Defendant's expert, Ed Fidelman, CPA, contends that the correct value of the Aviva Annuity at date of separation and presently is the cash "surrender" value.
 

 73. Both the Defendant and the Defendant's expert, concede, however, that the Defendant does not intend to surrender the policy.
 

 74. Any potential surrender charges are therefore speculative and should not be considered by the trial Court.
 

 75. "Evidence of circumstances not in existence on the date of separation [such as surrendering the annuity] is not competent evidence for the purpose of valuing a marital asset."
 
 Crowder v. Crowder
 
 ,
 
 147 N.C. App. 677
 
 , 682[,]
 
 556 S.E.2d 639
 
 , 642 (2001).
 

 The effect of these findings was that the trial court rejected defendant's proffer of a reduced value for the Aviva annuity. On appeal, defendant does not dispute the evidentiary support for these findings, or challenge the trial court's decision to disregard the penalties for early withdrawal, given that there was no evidence that defendant intended to incur this penalty by accessing the annuity. Defendant argues, instead, that having made these findings, it was "contradictory" for the trial court to include the annuity among defendant's potential sources of income in its orders for child support and alimony. Defendant's argument is not supported by citation to legal authority and rests on the premises that "Plaintiff-wife's attorney wanted Defendant-husband ordered to immediately access his annuity" and that "the trial court force[d]" defendant to incur surrender penalties by including the annuity in its child support and alimony orders. Defendant cites no authority suggesting that the wishes or strategy of opposing counsel is legally relevant to our analysis of whether the trial court abused its discretion, and we decline to consider this.
 

 Nor has defendant identified any findings or conclusions in the child support or alimony orders that support his assertion that the provisions of either order will
 
 *703
 
 "force" him to access the Aviva annuity. In its child support order, the trial court found that:
 

 *453
 
 13. Counsel for the parties have stipulated and agreed that the Court may make a determination of the parties' income, for purposes of determining child support, by considering evidence presented in the alimony case.
 

 14. The application of the North Carolina Child Support Guidelines meets the reasonable needs of the minor child in this cause.
 

 ...
 

 23. Health insurance for the benefit of [the child] is paid by the Defendant at the rate of $355 per month.
 

 24. The minor child does attend private school at Veritas. The Court finds tuition, which the Defendant pays, to be an extraordinary need of the minor child, in the monthly amount of $975 for the 2016/2017 school year.
 

 25. The calculation that results from these findings is attached hereto and incorporated by reference herein.
 

 26. The Defendant owes a duty of support in the amount of $636.40 per month.
 

 27. The Defendant shall pay support of $636.40 per month commencing August 1
 
 st
 
 , 2016 and thereafter on the first of each month.
 

 28. The Defendant shall continue to provide health insurance for the use and benefit of the minor child.
 

 29. The Defendant shall continue to pay Veritas tuition.
 

 In its alimony order, the trial court made the following findings:
 

 61. The Defendant's income includes a monthly FERS payment of $3136 per month.
 

 62. The Defendant also receives social security payments of $2,094 for himself.
 

 ...
 

 68. The Defendant lives modestly, showing his living expenses of $2762 per month on his 2015 financial affidavit.
 

 69. The Defendant shows expenses associated with the parties' minor child in the amount of $1678 which includes
 
 *454
 
 private school tuition[, court-ordered child support, and health insurance].
 

 70. On his 2015 affidavit, the Defendant shows total gross income of $6,972.
 

 71. By the Defendant's own representation, he has a surplus of his claimed income over his expenses in the amount of $4210, even without considering whether or not the Defendant should or could draw against retirement or elect to receive an annual benefit from the Aviva Annuity.
 

 72. Including the minor child's expenses as the Defendant's own expenses, he still has a surplus of his claimed income over expenses in the amount of $2532.
 

 ...
 

 85. Based upon all of the foregoing findings, the Court further finds that alimony in the amount of $1,250 per month, terminable upon the Plaintiff's death, the Defendant's death, the Plaintiff's remarriage, or cohabitation is equitable.
 

 These unchallenged findings show that after subtracting alimony, court-ordered child support, private school tuition, health insurance premiums for the minor child, and defendant's claimed expenses, from defendant's stated gross monthly income of $6972, defendant would have a surplus of $1282, and thus would not be "forced" to immediately surrender the Aviva annuity.
 

 Moreover, despite a passing reference to "other pre-tax investments," defendant's appellate argument is restricted to the Aviva annuity. In its child support order, the trial court found that defendant could potentially receive $2812 per month from his IRA. Defendant has not directed our attention to testimony or other evidence of a penalty that would be triggered by withdrawal from his IRA. In fact, defendant's expert witness testified that the only "penalty" would be the taxation of the funds upon withdrawal. Finally, we observe that defendant has not indicated what the amount of any withdrawal penalty would be for defendant's access to either source of income.
 

 Defendant argues that it was an abuse of discretion for the trial court to include defendant's potential income from the Aviva annuity
 
 *704
 
 in calculating defendant's child support obligation, because defendant would be "forced" by the court's orders to immediately access the annuity and incur a withdrawal penalty that the trial court did not include
 
 *455
 
 in its valuation of the annuity for equitable distribution purposes. Defendant has failed to establish that the terms of the child support and alimony orders, considered separately or together, would require him to cash in the annuity. We conclude that defendant is not entitled to relief on this issue.
 

 Trial Court's Valuation of the Miami Condominium
 

 Defendant argues next that the trial court "abused its discretion when it assigned a current fair market value of $255,000 for the Miami condo[minium]." We have considered this argument, and conclude that it is without merit.
 

 In its equitable distribution order, the trial court made the following findings of fact regarding the value of the condominium:
 

 90. 240 Collins Avenue, Unit 6D, otherwise referred to as Terrace View Towers is a condominium in Dade County, Miami Beach, FL.
 

 91. The parties acquired the FL Condominium in 2011 using the Defendant's separate funds.
 

 92. The condominium was titled to the parties jointly and the parties have stipulated that the condominium is marital property.
 

 93. The parties have stipulated that the condominium, at date of separation, had a value of $250,000.
 

 94. The Plaintiff contends the condominium has a date of distribution value of $255,000, based upon a recent comparable sale of a unit of identical square footage, in the same building, which has been improved.
 

 95. The unit owned by the parties has not been improved since purchase, and has been rented, with the Defendant receiving the rental income.
 

 96. The Plaintiff's opinion with respect to date of distribution value is credible, and supported by a credible comparable sale.
 

 97. The Defendant has also offered his opinion as to date of distribution value, pointing to the report of a comparable sale of "5G" occurring in May of 2016 for $299,000.
 

 *456
 
 98. The Defendant offered as evidence of this comparable sale, a marketing letter from a realtor.
 

 99. The marketing letter does not reference an address or a building but only "unit 5G."
 

 100. The Defendant did not testify to the square footage of his comparable and the marketing letter is silent as to that fact.
 

 101. The Defendant also conceded on cross examination that he has not visited the unit that sold for $299,000 and that he knew nothing about its condition[ ] or improvements.
 

 102. The Defendant offered no other evidence to corroborate the content of the realtor's letter which references the sale of "5G."
 

 103. The Defendant's opinion as to date of distribution value is not credible.
 

 104. The date of distribution value of 240 Collins Avenue, Unit 6D, Miami Beach, FL, otherwise referred to as Terrace View Towers, is $255,000.
 

 Defendant does not challenge the evidentiary support for any specific finding, or argue that the findings fail to support the trial court's conclusions regarding the value of the condominium. We conclude that the court's evidentiary findings support its ultimate finding that the value of the condominium on the date of distribution was $255,000.
 

 In urging us to reach a contrary result, defendant argues that the evidence offered by plaintiff's expert regarding the value of the condominium on the date of distribution did not comply with
 
 N.C. Gen. Stat. § 50-21
 
 (b) (2016), which provides in relevant part that "[d]ivisible property and divisible debt shall be valued as of the date of distribution."
 

 Defendant has argued that this "is not an issue where the trial court can, in its discretion, consider the weight of each opinion[,]" because, as a matter of law, the evidence offered by plaintiff's expert as to the value of the condominium on the date of distribution "must be disqualified[.]" The sole basis for
 
 *705
 
 this contention is that the comparable sale upon which plaintiff's expert witness based her opinion took place "within the last six months" prior to the trial, rather than on the date of distribution. On appeal, defendant cites
 
 Kiell v. Kiell
 
 ,
 
 240 N.C. App. 602
 
 ,
 
 772 S.E.2d 873
 
 (2015) (unpublished), for the rule that divisible property is valued as
 
 *457
 
 of the date of distribution. The parties have not disputed that divisible property is valued as of the date of distribution and as an unpublished case,
 
 Kiell
 
 is not binding on this court.
 

 Furthermore, the general rule is that weaknesses in a party's evidence go to the weight of the evidence, rather than its admissibility. "Questions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts."
 
 Bodie v. Bodie
 
 ,
 
 221 N.C. App. 29
 
 , 38,
 
 727 S.E.2d 11
 
 , 18 (2012) (internal quotation marks omitted).
 
 N.C. Gen. Stat. § 50-21
 
 (b) (2016) provides that "[f]or purposes of equitable distribution, ... [d]ivisible property and divisible debt shall be valued as of the date of distribution." However, defendant has not cited any authority holding that evidence of a sale of comparable property within the six months prior to trial is inadmissible on the grounds that the sale did not occur on the date of distribution. As a practical matter, there are likely many instances in which, as in the present case, the most recent comparable sale took place several months before trial. We hold that the date of the comparable sale upon which Ms. Xanthos based her opinion as to the value of the Miami condominium on the date of distribution is a factor that goes to the weight of the evidence, not its admissibility.
 

 In addition, we conclude that defendant failed to preserve this issue for appellate review. At trial, Ms. Xanthos testified that in her opinion the condominium had a value of $255,000. Ms. Xanthos based her opinion on evidence of the sale of a condominium in the same building, with the same square footage and tax-assessment value, that had been sold "within the last six months" before the trial. Defendant objected on the grounds that Ms. Xanthos was not a real estate appraiser, and that her reliance on public records rendered her opinion "speculative" because Ms. Xanthos had not personally inspected the condominium that was sold. Nonetheless, at no time did defendant object to Ms. Xanthos's testimony based on the date of the comparable sale, or argue that evidence of the sale was inadmissible because of the passage of time between the sale and the trial.
 

 N.C. R. App. P. Rule 10(a)(1) (2016) provides in relevant part that in order to preserve an issue for appellate review, "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make" and must have "obtain[ed] a ruling upon the party's request, objection, or motion." "As a general rule, the failure to raise an alleged error in the trial court waives the right to raise it for the first time on appeal."
 
 State v. Johnson
 
 ,
 
 204 N.C. App. 259
 
 , 266,
 
 693 S.E.2d 711
 
 , 716-17 (2010). "Our Supreme Court has long held that where a theory argued on appeal
 
 *458
 
 was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts."
 
 Cushman
 
 at 562,
 
 781 S.E.2d at 504
 
 (internal quotation marks omitted). We conclude that by failing to raise this issue at the trial level, defendant failed to preserve it for appellate review.
 

 Trial Court's Valuation of the Brazilian Properties
 

 Defendant argues next that the trial court abused its discretion when it determined the value on the date of distribution for properties owned by the parties in Brazil. Defendant asserts that "Ms. Xanthos's opinion should be disqualified" for the reasons stated in his earlier argument that the trial court erred by failing to disqualify Ms. Xanthos as an expert. In that we have held that defendant failed to show that the trial court abused its discretion in this regard, we likewise reject the same argument as applied to Ms. Xanthos's opinion on the value of the Brazilian properties.
 

 Defendant also contends that the evidence he presented was credible, and that Ms. Xanthos's opinion "must be disqualified" as
 
 *706
 
 "being a date of separation value multiplied by the current currency exchange rate." Defendant cites no authority on the proper role of evidence on currency exchange rates in determination of the value of real estate. Moreover, even assuming,
 
 arguendo
 
 , that defendant has correctly identified weaknesses in Ms. Xanthos's calculations, "[t]he foregoing is all relevant in considering the expert witness' credibility, but it does not render his opinion testimony inadmissible."
 
 McLean v. McLean
 
 ,
 
 323 N.C. 543
 
 , 556,
 
 374 S.E.2d 376
 
 , 384 (1988). We conclude that defendant has failed to establish that his generalized assertions that plaintiff's evidence should be disregarded entitle him to relief on appeal.
 

 Determination that 501 Rua Intendente was Plaintiff's Separate Property
 

 Defendant's next argument is that the trial court abused its discretion by determining that a specific property located in Brazil was plaintiff's separate property. We conclude that this argument lacks merit.
 

 The property at issue is referred to by the parties by its street address, which is 501 Rua Intendente. In its equitable distribution order, the trial court made the following findings about the property:
 

 123. There is an additional piece of real property in Brazil, identified as 501 Rua Intendente Alfredo Azevedo, the classification of which is disputed.
 

 *459
 
 124. The Plaintiff has introduced a certified copy of the property certificate to 501 Rua Intendente Alfredo Azevedo ... which has been admitted into evidence.
 

 121.
 
 [2]
 
 This property was owned by the Plaintiff before marriage and was received by the Plaintiff in the context of a prior divorce, in Brazil, from Jose Vilmar Gomes.
 

 125. The Plaintiff did not register the transfer of ownership from her former spouse, Jose Vilmar Gomes, until after her marriage to the Defendant.
 

 1. The Defendant testified, and the Court finds, that the Plaintiff delayed the transfer of this property into her name because there was a charge involved in doing so.
 

 126. According to the Defendant, during a trip to Brazil in 2002, the Plaintiff reported to him that she had to go [to] the clerk's office to perform a legally required act with respect to the property certificate.
 

 127. The property certificate reflects.... that:
 

 i. It has been declared by SONIA REGINA DE OLIVEIRA KABASAN that she married DENNIS KABASAN under the partial communi[ty] property regime. As from the marriage, she uses the name indicated above.
 

 128. The Defendant admits that there was at no time during the marriage a discussion between [him] and the Plaintiff to the effect that the Plaintiff intended to gift 501 Rua Intendente Alfredo Azevedo to the marriage.
 

 129. The Plaintiff credibly testified that at no time during the marriage, did she discuss with the Defendant the prospect of gifting 501 Rua Intendente Alfredo Azevedo to the marriage.
 

 130. The Defendant's position in support of the classification of this property as marital rests on the fact that his name appears as set forth above.
 

 *460
 
 131. The Court finds the Defendant's argument on the point of classification without merit.
 

 132. The partial community property regime in Brazil is consistent with North Carolina law in that property owned before marriage remains separate (unless gifted to the marriage), while property acquired during the marriage is presumed to be marital or "of the community" in the context of Brazilian law.
 

 133. When the Plaintiff went to the Brazilian clerk's office in 2002, she recorded the transfer of property from her former marriage to her, she recorded her divorce from her former Husband, and she recorded her marriage to the Defendant. There is no evidence of a gift of this real estate to be discerned from this recordation.
 

 134. The Defendant would extend the
 
 McLean
 
 presumption, which rises from the
 
 *707
 
 peculiar species of North Carolina tenancy by the entireties, to this property certificate. Such an extension is not credible, and in any event, the Court finds that the [Plaintiff] has rebutted any such presumption by the greater weight of the evidence, pursuant to N.C.G.S. § 50-20(b)(1).
 

 135. 501 Rua Intendente Alfredo Azevedo is the Plaintiff's separate property.
 

 Defendant does not dispute the evidentiary support for these findings, and we conclude that they support the trial court's conclusion that the 501 Rua Intendente property is plaintiff's separate property. In reaching this conclusion, we have considered, but ultimately rejected, defendant's arguments for a contrary result.
 

 Defendant's primary argument is that, because the parties' prenuptial agreement provided that the "terms and provisions"
 
 of the agreement
 
 would be construed and determined in accordance with North Carolina law, the trial court erred by admitting testimony concerning Brazilian family law. For several reasons, we hold that defendant has failed to establish a right to relief based upon this argument. First, defendant has not identified any provision of the prenuptial agreement that was improperly interpreted or construed under Brazilian law. Secondly, during trial, defendant did not object to the admissibility of Ms. Xanthos's testimony about Brazilian law on the grounds that it was barred by
 
 *461
 
 the prenuptial agreement. Instead, defendant's objections were based,
 
 inter alia
 
 , upon a supposed lack of foundation or the fact that certain documents were written in Portuguese.
 

 The thrust of defendant's argument is that the court's equitable distribution order reflects an inappropriate consideration of Brazilian law in its determination that the 501 Rua Intendente property was plaintiff's separate property. However, the trial court's only reference to Brazilian law was the observation that it was consistent with North Carolina law. Defendant does not identify findings or conclusions by the trial court that do not comply with North Carolina law, or that were based on Brazilian law rather than North Carolina law. We conclude that defendant has failed to show that the trial court improperly based its decision upon Brazilian law.
 

 Defendant also asserts that the trial court made an error of law by stating that plaintiff had "rebutted [the] ... presumption [that plaintiff intended the 501 Rua Intendente property to be a gift to the marriage] by the greater weight of the evidence, pursuant to [N.C. Gen. Stat.] § 50-20(b)(1)." Defendant contends, based upon our Supreme Court's opinion in
 
 McLean
 
 , that the proper standard is whether the presumption was rebutted by "clear, cogent and convincing evidence" and that it "is not clear whether or not, under this higher burden of proof, the trial court would still conclude that this property was the separate property of Plaintiff-wife."
 
 McLean
 
 was decided in 1988, and in 1991, our legislature amended
 
 N.C. Gen. Stat. § 50-20
 
 to provide that "[i]t is presumed that all real property creating a tenancy by the entirety acquired after the date of marriage and before the date of separation is marital property. Either presumption may be rebutted by the
 
 greater weight of the evidence
 
 ." (emphasis added). Therefore, this argument lacks merit.
 

 For the reasons discussed above, we conclude that defendant has failed to establish that the trial court abused its discretion in its determination that the property located at 501 Rua Intendente was plaintiff's separate property.
 

 Prenuptial Agreement's Provision Regarding Sale of Assets
 

 Defendant next contends that the trial court abused its discretion "when it failed to comply with the parties' valid prenuptial agreement, which required the sale of an asset if the parties could not agree on the value, or could not agree on who would receive the asset." We conclude that defendant has failed to establish that the trial court's error, if any, prejudiced him.
 

 *462
 
 The prenuptial agreement executed by the parties stated the following with regard to the division of marital property acquired after marriage in the event that the parties separated or divorced:
 

 If the parties cannot agree as to the value of any such subsequently acquired marital
 
 *708
 
 property, it shall be sold and the net proceeds split equally. If the parties cannot agree as to who should receive which particular assets to effectuate the equal division required by this Agreement, then any disputed asset shall be sold by public or private sale and the net proceeds split equally.
 

 In its order the trial court made the following findings relevant to this issue:
 

 148. The parties signed a Premarital Agreement. The Court has previously declared that the Premarital Agreement is valid and therefore ordered that [the] Court shall make an equal division of the marital estate.
 

 149. The Premarital Agreement does not bar equitable distribution.
 

 150. It is the Court's duty in an equitable distribution proceeding to identify, classify, value and distribute marital assets in kind.
 

 151. The Court does not find it necessary to order any marital property to be sold, in order to make an equal division of the marital estate.
 

 152. The Court notes that a provision of the premarital agreement recites that:
 

 ii. If the parties cannot agree as to the value of any such subsequently acquired marital property, it shall be sold and the net proceeds split equally. If the parties cannot agree as to who should receive which particular assets to effectuate the equal division required by this agreement, then any disputed asset shall be sold by public or private sale and the net proceeds split equally.
 

 153. Both parties having asserted claims for equitable distribution rather than an action to enforce this Premarital Agreement, except to the limited extent of the declaratory action brought by the Defendant.
 

 *463
 
 154. As to real property values at date of separation, the parties were in complete agreement, and these sale provisions are not triggered by disagreements with respect to real property values at date of separation.
 

 155. The parties disagree about the valuation of many marital assets in this case. For many of these assets, such as the FERS pension, the Survivor Benefit, the Aviva Annuity, the Vanguard IRA or the Vanguard Securities account, a forced sale would be impracticable, [and would] result in the wasting of the marital estate, [and in] undesired tax consequence[s].
 

 156. A full scale application of the sale provision contained in the Premarital Agreement as to each marital asset as to which there is a disagreement as to value or distribution, is not practical and would not be equitable.
 

 157. Both parties having asserted claims for equitable distribution, and the Court hearing the same, places the marital estate within the jurisdiction of the Court. To the extent the parties have entered into Stipulations and to the extent that the Court has entered a Declaratory Order with respect to an equal division of the marital estate, the Court must honor the same.
 

 Defendant characterizes these findings as showing that "[i]nstead of implementing [the] provision [in the prenuptial agreement,] the trial court ... argue[d] around it." Defendant does not elaborate on the basis of this assertion, and has neither challenged the evidentiary support for the court's findings, nor identified any specific error of law on the part of the trial court.
 

 Defendant cites
 
 Huntley v. Huntley
 
 ,
 
 140 N.C. App. 749
 
 ,
 
 538 S.E.2d 239
 
 (2000), in support of his argument that the trial court erred by not ordering that disputed property be sold. In
 
 Huntley
 
 , the parties executed a prenuptial agreement that expressly barred equitable distribution proceedings. When the husband sought equitable distribution, the wife argued that the terms of their agreement precluded it. On appeal, this Court agreed with the appellant. Defendant has not articulated the relevance of
 
 Huntley
 
 to the facts of the present case, in which both parties sought equitable distribution and neither party sought to prevent the equitable distribution proceeding on the grounds that it was barred by the terms of the agreement. The issue in this case is not the
 
 *464
 
 enforceability of the agreement but whether the trial court abused its discretion in its interpretation of the agreement.
 
 *709
 
 Moreover, it is axiomatic that " '[t]he party asserting error must show from the record not only that the trial court committed error, but that the aggrieved party was prejudiced as a result.' "
 
 Westlake v. Westlake
 
 ,
 
 231 N.C. App. 704
 
 , 706,
 
 753 S.E.2d 197
 
 , 200 (2014) (quoting
 
 Lawing v. Lawing
 
 ,
 
 81 N.C. App. 159
 
 , 162,
 
 344 S.E.2d 100
 
 , 104 (1986) ). In this case, defendant has failed to offer any argument on the issue of prejudice. For example, defendant has not identified any disputed property of which he would have benefitted by a sale rather than a distribution. Nor has defendant directed our attention to any point during the trial when he raised this issue. We conclude that defendant has failed to show that he is entitled to relief on the basis of this argument.
 

 Trial Court's Treatment of Defendant's FERS Pension
 

 Defendant's next two arguments challenge the court's distribution of his FERS pension. Defendant argues that the court abused its discretion by failing "to award a portion of the FERS pension to plaintiff as a distribution in kind" and by "awarding plaintiff half of the marital portion of the FERS pension [payments] that were paid to defendant after separation, when that income was included in the income calculation of the post separation support order."
 

 After he retired in 2010, defendant received a monthly pension pursuant to his participation in the Federal Employees Retirement System, or FERS. The parties do not dispute that (1) the marital portion of the FERS payments that defendant received between the date of separation and the date of distribution was $36,550; (2) the date of distribution value of the marital component of the FERS retirement benefit was $142,160; and (3) the value of the FERS survivor's benefit was $169,495. In its equitable distribution order, the trial court distributed the present value of the survivor's benefit to plaintiff, and the present value of the retirement benefit to defendant. Defendant argues on appeal that the trial court abused its discretion by failing to distribute half of the marital component of the FERS retirement benefit to plaintiff. Defendant notes that
 
 N.C. Gen. Stat. § 50-20
 
 (e) provides in part that "it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable" and apparently contends that the trial court abused its discretion by failing to order an "in-kind" distribution of monthly benefits from the FERS program to plaintiff.
 

 The sole basis of defendant's argument on this issue is his contention that, if plaintiff had been awarded benefits of $1500 per month, this
 
 *465
 
 would have had a favorable effect on his potential liability for alimony. However,
 
 N.C. Gen. Stat. § 50-20
 
 (f) expressly states that "[t]he court shall provide for an equitable distribution
 
 without regard to alimony for either party
 
 or support of the children of both parties." (emphasis added). We conclude that defendant has failed to show that the trial court abused its discretion by distributing the FERS benefits as discussed above or by failing to consider the alimony implications of its distribution of marital assets.
 

 On 28 March 2014, the trial court entered an interim order that,
 
 inter alia
 
 , provided temporary postseparation support for plaintiff. In its determination of defendant's postseparation support obligation, the court included defendant's FERS retirement benefits in its calculation of defendant's monthly income. The trial court found that defendant had a monthly income of $7024 and expenses of $2539, and that plaintiff was a dependent spouse with reasonable expenses of $1705 per month. Defendant has not challenged any aspect of this order.
 

 In its equitable distribution order, the trial court included in its calculation of the marital portion of the FERS retirement benefits the $36,550 in monthly benefits that defendant received between the date of separation and the date of distribution. Defendant contends that this was an abuse of discretion, and that plaintiff is "double dipping" as a result. However,
 
 N.C. Gen. Stat. § 50-16
 
 .2A(b) (2016) provides that:
 

 In ordering postseparation support, the court shall base its award on the financial needs of the parties, considering the parties' accustomed standard of living, the present employment income and other recurring
 
 *710
 
 earnings of each party from any source, their income-earning abilities, the separate and marital debt service obligations, those expenses reasonably necessary to support each of the parties, and each party's respective legal obligations to support any other persons.
 

 We conclude that it was not an abuse of discretion for the trial court to consider defendant's FERS pension income in its determination of defendant's ability to pay postseparation support. The basis of defendant's argument on "double dipping" is not entirely clear, given that although defendant's FERS benefits were included in the trial court's determination of postseparation support for the purpose of establishing defendant's ability to pay postseparation support, none of defendant's FERS benefits were distributed to plaintiff prior to the entry of the equitable distribution order. We conclude that defendant has failed to show
 
 *466
 
 that the trial court abused its discretion by including defendant's FERS benefits in its postseparation support order and later distributing a portion of these benefits to plaintiff.
 

 Findings Required for Alimony Order
 

 Defendant argues next that the trial court "abused its discretion when it failed to make any findings on plaintiff's expenses, or the minor child's expenses which defendant pays, before concluding that plaintiff is a dependent spouse and entering an order for permanent alimony[.]" Defendant contends that the trial court's findings of fact with regard to plaintiff's and the child's expenses were insufficient to support its conclusion that plaintiff was a dependent spouse. We conclude that defendant's argument has merit.
 

 N.C. Gen. Stat. § 50-16
 
 .1A(2) (2016) defines a dependent spouse as "a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse."
 
 N.C. Gen. Stat. § 50-16
 
 .3A(a) (2016) states that when a party applies for alimony, the "court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent
 
 *711
 
 spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors, including those set out in subsection (b) of this section."
 

 "In all non-jury trials, the trial court must specifically find 'those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached.' "
 
 Carpenter v. Carpenter
 
 ,
 
 245 N.C. App. 1
 
 , 4,
 
 781 S.E.2d 828
 
 , 832 (2016) (quoting
 
 Crocker v. Crocker
 
 ,
 
 190 N.C. App. 165
 
 , 168,
 
 660 S.E.2d 212
 
 , 214 (2008) (internal quotation marks omitted)). Pursuant to
 
 N.C. Gen. Stat. § 50-16
 
 .3A(a), a party is entitled to alimony if the court finds that the party "is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]" This Court has previously held:
 

 A "dependent spouse" must be either actually substantially dependent upon the other spouse or substantially in need of maintenance and support from the other spouse.... A party is "actually substantially dependent" upon her spouse if she is currently unable to meet her own maintenance and support. A party is "substantially in need of maintenance and support" if she will be unable to meet her needs in the future, even if she is currently meeting
 
 *467
 
 those needs. If the trial court determines that a party's reasonable monthly expenses exceed her monthly income, and that she has no other means with which to meet those expenses, it may properly conclude the party is dependent.
 

 Carpenter
 
 ,
 
 245 N.C. App. at 832-33
 
 , 781 S.E.2d at 832-33 (citing
 
 Barrett v. Barrett
 
 ,
 
 140 N.C. App. 369
 
 , 370-71,
 
 536 S.E.2d 642
 
 , 644 (2000) (internal citation omitted)), and
 
 Beaman v. Beaman
 
 ,
 
 77 N.C. App. 717
 
 , 723,
 
 336 S.E.2d 129
 
 , 132 (1985).
 

 In order to decide whether a party is substantially in need of maintenance and support, and thus is a dependent spouse, "the court must determine whether [that] spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial
 
 *712
 
 contribution from the other."
 
 Vadala v. Vadala
 
 ,
 
 145 N.C. App. 478
 
 , 481,
 
 550 S.E.2d 536
 
 , 538 (2001). As a result, in order to determine whether a party is a dependent spouse, "the trial court must look at the parties' income and expenses in light of their accustomed standard of living."
 
 Helms v. Helms
 
 ,
 
 191 N.C. App. 19
 
 , 24,
 
 661 S.E.2d 906
 
 , 910 (2008) (citing
 
 Williams v. Williams
 
 ,
 
 299 N.C. 174
 
 , 182,
 
 261 S.E.2d 849
 
 , 856 (1980) ). If the trial court fails to make findings regarding the parties' expenses, we must remand for entry of additional findings.
 
 Rhew v. Rhew
 
 ,
 
 138 N.C. App. 467
 
 ,
 
 531 S.E.2d 471
 
 (2000).
 

 In the present case, the court's alimony order does not include any findings as to plaintiff's expenses. On appeal, plaintiff notes that in its order the trial court stated that "the Court takes Judicial Notice of all prior Orders entered in this file number and the same are incorporated herein as if by reference."
 
 (Rp 109)
 
 However, the "general incorporation of all findings from other court documents is not sufficiently specific to demonstrate whether the trial judge properly considered the statutory factors for awarding alimony ... [and] these findings of fact cannot be considered in determining whether the court's findings of fact are adequate under N.C.G.S. § 50-16.3A."
 
 Crocker
 
 ,
 
 190 N.C. App. at 170
 
 ,
 
 660 S.E.2d at 215
 
 . We conclude that the trial court's order must be reversed and remanded for entry of additional findings concerning the parties' expenses.
 

 Inclusion of the Child's Social Security Income in Alimony Calculations
 

 Defendant also argues that the trial court "abused its discretion when it included the child's social security income in the defendant's income calculation, in the alimony order." We conclude that defendant has failed to show that the trial court's error in this regard, if any, was prejudicial.
 

 *468
 
 The North Carolina Child Support Guidelines provide that, for purposes of determining a party's child support obligation, "Social Security benefits received for the benefit of a child as a result of the ... retirement of either parent are included as income attributed to the parent on whose earnings record the benefits are paid, but are deductible from that parent's child support obligation." It is less clear whether such benefits are appropriately considered in the court's ruling on alimony.
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(4) directs the court, in determining the amount and duration of alimony, to consider the "amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others[.]" Although the statute references "social security," it does not address the proper treatment of social security benefits received by a party on behalf of a child.
 

 In this case, defendant included social security benefits received on behalf of the parties' minor child in his 2015 financial affidavit, as noted by the trial court in its alimony order. The trial court made findings pertaining to the parties' accustomed standard of living and other factors relevant to an award of alimony, including defendant's liability for child support, and concluded that plaintiff was entitled to alimony in the amount of $1250 a month. We have held that this order must be reversed and remanded for entry of additional findings. We conclude, however, that defendant has failed to show that he was prejudiced by the trial court's inclusion of social security benefits received by defendant on behalf of the minor child in its alimony order. Defendant is not entitled to relief on the basis of this argument.
 

 Imputation of Additional Income to Defendant
 

 Defendant also argues on appeal that the trial court "abused its discretion in the child support order when it imputed additional income to defendant, after improperly finding that defendant was deferring income in bad faith, with naive indifference to the reasonable needs of the child, for the purpose of minimizing his support obligation." Defendant contends that the trial court's findings of fact do not support this conclusion.
 

 The North Carolina Child Support Guidelines ("the Guidelines") state:
 

 (3) Potential or Imputed Income. If the court finds that the parent's voluntary unemployment or underemployment is the result of the parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation, child support may be calculated based on the parent's potential, rather than actual, income....
 

 *469
 
 In the present case, the child support order included the following findings of fact relevant to defendant's potential sources of income, in addition to his retirement and social security benefits:
 

 18. After equitable distribution, and based upon the Defendant's 2015 form 4 affidavit and Defendant's exhibit 15, Defendant's gross monthly income consists of the following:
 

 19. The Defendant has acknowledged, however, deferring income that he could be receiving from an IRA Account, a Trust Account and an Aviva Annuity. The Court finds that the Defendant could receive the following monthly income, from these accounts:
 

 20. The Court finds that the Defendant is suppressing income by deferring income, in bad faith and with naive indifference to the reasonable needs of the minor child, for the purpose of minimizing his support obligations.
 

 21. The minor child's reasonable needs are not met without imputing the income that the Defendant seeks to defer in a guideline calculation.
 

 22. The Defendant's income, for guideline purposes is $11,724, being the total of income actually received by the Defendant, and income being deferred by the Defendant.
 

 Defendant is correct that, in its order, the trial court characterized its consideration of defendant's potential investment income as "imputing" income to defendant based upon defendant's deliberate deferral of available income. However, a trial court has the discretion to consider all sources of a parent's income and is not required to make findings that will support imputation of income before considering income from investments. For example, in
 
 Burnett v. Wheeler
 
 ,
 
 128 N.C. App. 174
 
 ,
 
 493 S.E.2d 804
 
 (1997), the defendant argued that the trial court had erred by
 
 *470
 
 imputing additional income to him without making the requisite findings. We rejected the defendant's interpretation of the court's order and held that:
 

 The amount of child support awarded is in the discretion of the trial judge and will be disturbed only upon a showing of abuse of that discretion. Defendant is correct in his contention that a person's capacity to earn income may be the basis of an award only if there is a finding that the party deliberately depressed his income or otherwise acted in deliberate disregard of the obligation to provide[ ] reasonable support for the child. However, we find that defendant mischaracterizes Judge Foster's order. Judge Foster did not "impute" an income of $ 77,000 to defendant. A careful review of the record reveals that the trial court found that defendant's total income, from all available sources, equaled at least $77,000.
 
 When setting child support and determining the defendant's gross income,
 

 *713
 

 it is appropriate to consider all sources of income
 
 along with the defendant's earning capacity.
 
 See North Carolina Child Support Guidelines.
 
 The trial court found as fact that defendant had retirement accounts which totaled $722,384 and that he had stocks and land valued at $60,000 and $74,000, respectively.... We find that the trial court did not impute any income to defendant and therefore overrule this assignment of error.
 

 Burnett
 
 ,
 
 128 N.C. App. at 177
 
 ,
 
 493 S.E.2d at 806
 
 (citations omitted) (emphasis added). Thus,
 
 Burnett
 
 upheld the trial court's inclusion of defendant's potential income from real estate and investments in the absence of a finding by the court that it was "imputing" such income to the defendant on the basis of the defendant's capacity to earn. We conclude that the trial court had the discretion to consider defendant's potential investment income, and do not reach the issue of whether the evidence supported the court's findings regarding imputed income.
 

 Remaining Issues
 

 Defendant has raised two other issues. Defendant argues that the trial court abused its discretion by using "two different incomes for [defendant's] income for purposes of calculating child support and alimony," and that the court abused its discretion by largely adopting the terms of a proposed order submitted by plaintiff. Defendant does not support either of these arguments by citation to authority and we
 
 *471
 
 conclude that defendant is essentially asking us to reweigh the evidence, which we will not do. "Although a party may disagree with the trial court's credibility and weight determinations, those determinations are solely within the province of the trial court."
 
 Smith v. Smith
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 12
 
 , 29 (2016) (quotation omitted).
 

 Conclusion
 

 For the reasons discussed above, we conclude that the trial court's alimony order must be reversed and remanded for entry of additional findings concerning the parties' expenses. We conclude that the trial court did not otherwise err and that in all other respects, its equitable distribution, child support and alimony orders should be affirmed.
 

 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 

 Chief Judge McGEE and Judge CALABRIA concur.
 

 [1]
 

 Mr. Shriner testified as an expert for defendant in the instant case.
 

 [2]
 

 The out-of-sequence numbering is set out as in the equitable distribution order.